UNITED STATES of America, Appellee,

v.

Salvatore Ignatius TOTARO, Appellant.

UNITED STATES of America, Appellee,

v.

William Patrick MIDDLETON, Appellant.

Nos. 75–1995, 75–1996.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 12, 1976.

Decided Feb. 7, 1977.

Edward J. Menard, Oxon Hill, Md., for appellant in No. 75–1995.

Robert P. Feeney, Chevy Chase, Md. (Fay & Feeney, Chevy Chase, Md., on brief), for appellant in No. 75–1996.

Joseph M. Fairbanks, Asst. U. S. Atty., Baltimore, Md. (Jervis S. Finney, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Totaro and Middleton were jointly indicted for violation of 18 U.S.C. §§ 892, 894, and 2. They were charged and convicted of making two extortionate extensions of credit to one Pickett in violation of 18 U.S.C. § 892, the first on or about November 22, 1974 in the amount of $4000, and the second on or about February 10, 1975 in the amount of $2500. They were also charged and convicted of using extortionate means to collect from the same Pickett the said $4000 extortionate loan in violation of 18 U.S.C. § 894.

On appeal, they have assigned numerous errors relating to the introduction and suppression of evidence, the sufficiency of the evidence to support the verdict, instructions to the jury, and whether or not the $2500 loan was an extension of credit within the meaning of 18 U.S.C. § 891(1). We are of opinion the assignments of error are without merit and that only the latter one of them deserves any extensive discussion.

The $4000 loan carried interest at a rate stipulated to be 300% per annum, and the $2400 loan interest at a rate stipulated to be 520% per annum.

Some particulars concerning the $2500 loan follow. Pickett was in need of money to buy out his partner in a business enterprise called Small Car World No. 2, and called Totaro to see about a loan for that purpose. He met Totaro at Middleton's house. Totaro wrote a check to Pickett on the business account of himself and Middleton in the amount of $2500. Pickett took the $2500 check, endorsed it, and gave it to his partner, but the check was not honored by the bank on account of insufficient funds. Totaro and Middleton tried to get back the $2500 check they had given to Pickett but were told by Pickett that he didn't have the check.

The record is replete as to all of the transactions with either veiled or direct threats and shows of force so as to constitute extortion.[1] The only question we consider in detail is whether the loan agreed to, and on account of which the $2500 bad check was delivered to Pickett, constitutes an extension of credit under the statute.

18 U.S.C. § 891(1) provides: "To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred."

In connection with this definition, the district court charged the jury that " . . . an agreement to enter into an extension of credit, even though the actual loan did not—was not consummated, if they find the other factors present, which I went over in my instructions, could constitute an extension of credit."

Thus, the gist of the district court's charge was that if there was an agreement to make an extortionate extension of credit, although the credit may not have been in fact extended because the check to Pickett was not paid, the act of making the agree-

---

1. See also 18 U.S.C. § 892 as to proof which may establish a prima facie case that a loan was extortionate.

ment could nevertheless be found by the jury to be an extension of credit within the meaning of the statute.

We think the district court correctly charged the jury. The statute provides that an extension of credit may be "to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred." § 891(1).

There is no doubt that Totaro and Middleton entered into an agreement to make the extortionate loan of $2500. Although the loan may have been invalid because the check was not paid, nevertheless the credit agreement was entered into. We think that is all the statute requires, and that when the agreement was made the crime was complete so that the fact the check delivered to Pickett was bad would not serve to exonerate Totaro and Middleton.

In the three cases construing § 891(1) and another mentioning it, the statute has received a broad construction. They are *United States v. Annerino,* 495 F.2d 1159 (7th Cir. 1974), *United States v. Briola,* 465 F.2d 1018 (10th Cir. 1972), *United States v. Keresty,* 465 F.2d 36 (3rd Cir. 1972), and *United States v. Andrino,* 501 F.2d 1373 (9th Cir. 1974). In *Annerino,* indebtedness arising through the unauthorized use of another's credit card and misappropriation of partnership funds was held to be an extension of credit within the meaning of § 891(1). The same result obtained in *Briola* when one bookmaker in a partnership operation stole money from the partnership, and in *Keresty* for a debt owed, but disputed, on account of a game of dice. Apparently the point was not raised in *Andrino* which concerned a bet owed a bookmaker on account of a horse race.

These cases gave § 891(1) a broad construction in order not to confine it to loan sharks' activities. It is not necessary, however, for us to even go that far because our case concerns itself with the loan sharks Totaro and Middleton and their loans. In the case of the $2500 loan, there was an agreement to make it, although the consid-

eration for the loan as made may have failed. We think the statute proscribes an agreement to make an extortionate loan, as well as the making of the extortionate loan itself, and that when Totaro and Middleton agreed to make the extortionate $2500 loan to Pickett, they put themselves within the literal terms of the statute by such agreement. That being so, the instruction of the district court was correct and the judgments of conviction are

AFFIRMED.