UNITED STATES of America,
Appellee,

v.

Cataldo Calegro DeLUTRO, Defendant-
Appellant.

No. 214, Docket 34987.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1970.

Decided Dec. 11, 1970.

Irving Anolik, New York City, for de-
fendant-appellant.

Edward M. Shaw, Asst. U. S. Atty.
(Whitney North Seymour, Jr., U. S.
Atty. S.D.N.Y., Jack Kaplan, Asst. U. S.
Atty., on the brief), for appellee.

Before WATERMAN, HAYS and
FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

 Cataldo Calegro DeLutro appeals
from a judgment of conviction of vio-
lating the federal loansharking statute,
18 U.S.C. § 894, and the Hobbs Act, 18
U.S.C. § 1951. After a jury trial in the
United States District Court for the
Southern District of New York before
Edmund L. Palmieri, J., appellant re-
ceived concurrent eight year sentences
and a $10,000 fine on each count. The
only issue on appeal that requires ex-
tended discussion is whether conviction
under the anti-extortion statutes cited
above is barred if the victim denies at
trial that any threats were made or that
he was ever put in fear.

According to the facts, as the jury could have found them, that issue arises in the following context. DeLutro, a money lender, loaned one Leonard Horowitz a total of $42,000 in cash over a seven month period ending in the spring of 1969. Horowitz, an 80-year old New Yorker, needed the money for his failing fur business. The money was loaned at interest of four per cent ι week, or 208 per cent per year.

In early May 1969, FBI agents questioned Leonard Horowitz and his brother Max about their relationship with DeLutro and obtained permission to install listening equipment at their business office to record a meeting with DeLutro. On May 12, Leonard Horowitz informed DeLutro's messenger that he was unable to make his full weekly payment. Predictably, this brought DeLutro over later that day to collect. A lengthy interchange ensued, first with Leonard alone and then with both brothers present. The entire conversation was recorded, and was watched by an FBI agent hidden a few feet away.

At trial, the Government played the tape of the conversation for the jury, and the FBI agent who saw the entire encounter testified as to defendant's physical actions. Leonard Horowitz was called to testify to the making of the loan and the accuracy of the May 12 recording, which he did. On cross-examination, however, Horowitz stated that DeLutro did not threaten him in the May 12 conversation and that he had not been fearful that violence would be used against him. He also agreed with defense counsel that his past relationship with DeLutro had been "cordial." Judge Palmieri thereafter permitted the Government to question Horowitz further on his state of mind at the time of the May 12 incident, since that door had been thrown wide open. Horowitz then de-

nied that, when shown a picture of DeLutro, he had told FBI agents that DeLutro was "vicious" and that he (Horowitz) "could get killed" and that he had met DeLutro once without telling the FBI because he was afraid for his life and the lives of his family. Two FBI agents then testified that Leonard Horowitz had made precisely those statements to them in May 1969.[1]

Appellant claims that the evidence was insufficient as a matter of law because "some testimony-in-chief from a victim was essential to prove the *corpus delicti* of the crime, namely, the 'use of extortionate means.' "[2] Appellant has correctly singled out the key element in the case. Thus, Judge Palmieri charged the jury that the real issue was whether appellant had used "extortionate means" in collecting a payment due on the outstanding loan. The term, which appears in section 894 of Title 18, is defined in section 891(7) as

> any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person.

We do not agree that the only way of proving that there was "an * * * implicit threat * * * of violence" was by the testimony at trial of Leonard Horowitz. If that were so, then the purpose of the statute could easily be nullified by terrorizing the victim. However, this does not relieve the Government of the necessity of proving its case. Obviously, it must still present legally admissible evidence that the prohibited threats were made. But it did that here. Except for the constitutional point briefly discussed below, the recording of the conversation between DeLutro and Leonard and then Max Horowitz was clearly admissible in evidence.[3] So was the testimony of Agent Seneff, who observed

---

1. A third agent also testified as to what Horowitz said on that occasion.

2. Brief for Appellant at 6.

3. What DeLutro said on May 12, 1969 was not offered for its truth, but because

his words were the very crime charged. Therefore, his statements were not hearsay; even if they were, defendant's statements would be admissible. J. Wigmore, Evidence §§ 1048, 1770 (3d ed. 1940).

Horowitz's actions and demeanor. While the evidence was hardly overwhelming, together this was enough for the jury to have found that DeLutro impliedly threatened Leonard Horowitz with violence if the debt were not paid. Naturally, the testimony of Horowitz at trial that he was not threatened detracted from the Government's case. Indeed, the trial judge properly charged the jury that if it believed that testimony, it should acquit. But the jury was not required to credit that testimony and in judging the credibility of Horowitz on that point, it could take into account, as the judge correctly told it to, the contradictory statements of Horowitz to the FBI in May 1969. The jury apparently concluded that Horowitz was sufficiently scared at trial to deny his terror in the past. Each juror obviously used his common sense, a frequent occurrence with the jury system. We should do no less, and we reject the notion that the silencing of a victim at trial can absolutely eliminate the possibility of a conviction.

While appellant has a number of other arguments, none requires more than a brief discussion. The attacks on the constitutionality of 18 U.S.C. § 894 are precluded by our decisions in United States v. Perez, 426 F.2d 1073 (2d Cir.), cert. granted, 400 U.S. 915, 91 S.Ct. 175, 27 L.Ed.2d 154 (1970), and United States v. DeStafano, 429 F.2d 344 (2d Cir. 1970). Appellant claims that the recording of May 12, 1969 was inadmissible because it violated his fourth amendment rights. The argument has been rejected by this court a number of times, e. g., United States v. Campbell, 426 F.2d 547, 553 (2d Cir. 1970); United States v. Kaufer, 406 F.2d 550 (2d Cir.), aff'd, 394 U.S. 458, 89 S.Ct. 1223, 22 L.Ed.2d 414 (1969), although we note that the issue is pending in the Supreme Court in United States v. White, 405 F.2d 838 (7th Cir.), cert. granted, 394 U.S. 957, 89 S.Ct. 1305, 22 L.Ed.2d 559 (1969), argued October 20, 1970, 39 U.S.L.W. 3179. Appellant also claims that he was entrapped. The argument was not made below and, in any event, is not persuasive on the merits. In addition, appellant complains of Judge Palmieri's refusal to charge that the Government's failure to call Max Horowitz as a witness justified an inference unfavorable to the Government. However, since Max was fully available to the defense, there was no error. Finally, we have considered appellant's other arguments and find them without merit.

Judgment affirmed.