**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Paul DeLUCA, Robert Kaye, James Danno, and John Lee,**
**Defendants-Appellants.**

Nos. 81–1523 to 81–1526.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1982.

Decided Nov. 22, 1982.

Rehearings and Rehearings En Banc Denied Jan. 18, 1983.

David R. Evans, Los Angeles, Cal., for DeLuca.

Bernard I. Segal, Los Angeles, Cal., for Kaye.

Victor Sherman, Nasatir, Sherman, Hirsch & Re, Los Angeles, Cal., for Danno.

Anthony P. Brooklier, Marks & Brooklier, Beverly Hills, Cal., for Lee.

Janet L. Goldstein, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Appeal from the United States District Court for the Central District of California.

Before WRIGHT, TANG, and SCHROEDER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Kaye and three codefendants were tried on a 20-count indictment arising from Kaye's attempt to dominate the rebuilt foreign auto parts industry in southern California. He owned Universal Auto Electric company, which manufactured rebuilt electrical foreign auto parts. He did not like competition, and from 1974 to early 1980 eight competing California companies were struck by arson.

The jury reached guilty verdicts on all 20 counts, finding all defendants guilty of conspiracy and racketeering. Defendants Lee and DeLuca were convicted of additional counts of extortion based on threats to Kaye's competitors. The jury found Danno guilty also of several explosives counts and several corresponding counts of extortion by physical violence based on the same incidents. Kaye was guilty on all counts.

I. The Grand Jury

Kaye contends the indictment should be dismissed and argues that much of the evidence before the indicting grand jury was hearsay or incomplete. He sought access to grand jury records, which he thought would support his claim. After examining the material in camera, the judge denied the motion.

■ We do not dismiss an indictment valid on its face absent a showing that the government flagrantly manipulated, overreached, or deceived the jury. *E.g., United States v. Stone,* 633 F.2d 1272, 1274 (9th Cir.1979). Although we have criticized the use of hearsay testimony when more reliable evidence is available, *United States v. Samango,* 607 F.2d 877, 882 & n. 7 (9th Cir.1979), it is wholly adequate to support an indictment. *United States v. Garner,* 663 F.2d 834, 840 (9th Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982).

■ Nor does incomplete evidence before the grand jury detract from the resulting indictment. *Cf. United States v. Garner,* 663 F.2d at 840 ("the mere possibility that an absent juror might not hear any evidence on one of the counts is not a sufficient basis for attacking the indictment"). We find no suggestion that the grand jury failed to exercise its independent judgment. *See United States v. Cederquist,* 641 F.2d 1347, 1353 (9th Cir.1981).

II. Convictions under 18 U.S.C. § 844(i).

A. *Use of an "Explosive"*

■ Kaye and Danno were convicted on counts 10, 12, 14, 16, and 18, and Kaye alone on count 4, of violations of 18 U.S.C. § 844(i), which proscribes the destruction of a building "by means of an explosive." They assert that the fires charged in the indictment did not involve the use of an "explosive," as we defined the term in *United States v. Gere,* 662 F.2d 1291 (9th Cir. 1981), an opinion filed several months after this trial.

The government attempts to *distinguish Gere,* pointing out that it focused exclusively on the statute's definition of an "incendiary device." It contends that under other portions of the definition an air-fuel mixture created by spreading gasoline inside a building satisfies the intended meaning of "explosive." This interpretation proved attractive to the Eleventh Circuit in *United States v. Hewitt,* 663 F.2d 1381 (11th Cir. 1981).

Were we considering this issue free from our prior decisions on § 844, we would adopt the government's position and affirm the explosives convictions.

But we are bound by *United States v. Cutler,* 676 F.2d 1245, 1248 (9th Cir.1982), in which we rejected the broader interpretation of explosive now offered by the government. Consequently, we reverse the convictions on counts alleging violation of 18 U.S.C. § 844(i). We shall not face this problem again. Congress has amended 18 U.S.C. § 844 to include arson by fire (in addition to explosive) within its provisions.

Anti-Arson Act of October 12, 1982, Pub.L. No. 97–298.

### B. *Multiple-Object Conspiracy Instruction*

Count 1 charged a conspiracy. It recited three objects, two involving extortion and one involving arson under § 844.

■ In *United States v. Carman,* 577 F.2d 556 (9th Cir.1978), we concluded that a multiple-object conspiracy indictment is legally sufficient to support a conviction, *"so long as no substantive count conviction is overturned because the count failed to state a crime."* 577 F.2d at 567 (emphasis in original). But if the judge instructs the jury that it need find only one of the multiple objects, and the reviewing court holds any of the supporting counts legally insufficient, the conspiracy count also fails. We explained:

> The one-is-enough charge makes it impossible to know precisely what the jury considered. Not knowing, a reviewing court must overturn the conspiracy conviction.

*Id.* at 568. *Accord United States v. Talkington,* 589 F.2d 415, 417–18 (9th Cir.1978) (per curiam).

■ The judge's instruction here permitted the jury to convict by unanimously finding any one of the three objects. He expressly advised that the jury "need not find that the conspiracy existed to commit all three criminal activities." Because under this instruction the jury could have focused on a legally insufficient object of the conspiracy, we reverse the convictions of all defendants under count 1.

### C. *Effect on Extortion and RICO Counts*

Our decision to reverse the convictions under § 844 and the conspiracy conviction does not affect the remaining counts. Each fire formed the basis not only for an arson count, but also for a count of extortion by physical violence. Moreover, they were charged as predicate offenses under state law for the RICO count.

■ Only the testimony by two government experts about the nature of explosives and incendiary devices would have been inadmissible in the absence of the § 844 counts. The testimony was scientific and technical in nature and quite brief. We fail to find that it pervaded the entire trial, emotionally inflamed the jury, or could not have been segregated by the jury. *See United States v. Brown,* 583 F.2d 659, 669 (3d Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). It had no adverse effect on the other counts.

■ We reject Kaye's contention that reversing the conspiracy count precludes reliance on coconspirator hearsay evidence to support his convictions on the remaining counts. The judge heard sufficient evidence to establish a prima facie showing of the existence of a conspiracy and Kaye's slight connection to it. *See United States v. Batimana,* 623 F.2d 1366, 1368 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). With that, the coconspirator hearsay was admissible notwithstanding the eventual result on the conspiracy count. *See United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076, 1082 (9th Cir.1982) (different standards of proof).

### III. The Trial Judge

Defendants sought a continuance. When the district court denied it they sought a writ of mandamus from this court. While that petition was pending, the case was transferred to Judge Real. Danno moved to disqualify Judge Real for bias and challenged the transfer, arguing that it violated local rules.

■ Even if the transfer failed to satisfy the literal terms of the local rule, *see United States v. Radlick,* 581 F.2d 225, 230 (9th Cir.1978), it met minimum due process demands. *United States v. Torbert,* 496 F.2d 154, 157 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974). Because general orders and local rules not only implement due process and other statutory rights but also promote efficiency, we permit the district court broad discretion in determining their requirements. *United States v. Simmons,* 476 F.2d 33, 35 (9th Cir.1973).

Judge Gray heard argument on the bias motion. He considered affidavits in camera and refused to order Judge Real disqualified. Although he expressed "great concern" over Judge Real's conduct toward Danno's attorney, he refused to conclude that it justified granting the motion.

■ The motion focused primarily on Judge Real's improper conduct toward Danno's attorney in a prior case with a different defendant. Because Danno failed to show that Judge Real directed a bias toward him, rather than toward his attorney, he has not shown that Judge Gray abused his discretion. *See United States v. Carignan,* 600 F.2d 762, 763–64 (9th Cir.1979).

Kaye and Danno attack Judge Real's conduct throughout trial. They claim that his lack of impartiality and interference justify a new trial.

■ The transcript reveals that in the presence of the jury Judge Real raised his voice to defense counsel, refused to permit their approach to the bench, and criticized or admonished them. Notwithstanding our concern over such conduct, our close examination of the record does not convince us that defendants were denied due process by an unfair trial. *See United States v. Poland,* 659 F.2d 884, 892–94 (9th Cir.) (judicial misconduct claim rejected despite judge's "impatience and irritation" directed toward counsel and toward defendants during their testimony), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981).

The vast majority of the specific instances cited in defendants' briefs took place outside the presence of the jury. Others were provoked or, like the rebuffs of counsels' repeated and unnecessary requests to approach the bench, were proper exercises of the judge's authority to control his courtroom.

More importantly, the judge three times cautioned the jury that his comments or admonitions of counsel were not evidence and were not to be considered. *See United States v. Robinson,* 635 F.2d 981, 984–86 (2d Cir.1980), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981).

We conclude that defendants have made an insufficient showing of a pervasive climate of partiality or unfairness necessary to succeed on a claim of this kind. They have failed to show the extremely high level of interference necessary to justify a new trial. *See generally United States v. Saavedra,* 684 F.2d 1293, 1299 (9th Cir. 1982). Nor is our conclusion changed by defendants' supporting claims, to be discussed briefly.

■ Defendants object to the judge's interjection during the cross-examination of a witness. We are puzzled by his insistence on informing the courtroom that he refuses to accept sentencing recommendations. The defendants may be correct that the comments weakened the force of their cross-examination. Nonetheless, because the judge properly may intervene to clarify evidence or testimony, *United States v. Price,* 623 F.2d 587, 592–93 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980), and the comments were not directed toward the witness's credibility, the incident does not constitute reversible error.

■ Nor do Judge Real's restrictions on cross-examination of the government's witnesses change our conclusion. Generally, once cross-examination reveals sufficient information with which to appraise the witness's possible bias and motives, confrontation demands are satisfied. *Skinner v. Cardwell,* 564 F.2d 1381, 1389 (9th Cir.1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978); *accord United States v. Cutler,* 676 F.2d 1245, 1248 (9th Cir.1982); *United States v. Hughes,* 658 F.2d 317, 321 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).

■ Defendants appear to have presented the jury sufficient information. They questioned the primary witnesses about prior convictions, threats to an informer, use of drugs, plea agreements, and possible sentences, among other topics. A trial judge "need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture has

already been developed." *United States v. Fortes,* 619 F.2d 108, 118 (1st Cir.1980).

On retrial, if there be one, we anticipate more judicial restraint will characterize the proceedings.

## IV. Sufficiency of the Evidence

### A. Defendant DeLuca

█ DeLuca challenges his conviction for extortion. The jury found him guilty of attempted extortion based on a threat of violence to Michael Lichstein, owner of a competing auto parts company.

Lichstein testified that DeLuca told him that Kaye was unhappy that his company charged lower prices than Universal and that he "didn't want to have problems with Bobby Kaye." Boasting that he himself had been "involved in setting some of the fires," DeLuca warned Lichstein that he also could have a fire.

DeLuca argues that the evidence was insufficient because his comments were ambiguous. Even if ambiguous, the existence of an extortionate demand depends on the circumstances, which the jury interprets. Here, the government presented sufficient evidence for the jury to find DeLuca guilty beyond a reasonable doubt. *See United States v. Zemek,* 634 F.2d 1159, 1174 (9th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981); *United States v. Spears,* 568 F.2d 799, 801–02 (10th Cir.), *cert. denied,* 439 U.S. 839, 99 S.Ct. 127, 58 L.Ed.2d 137 (1978); *United States v. Barcley,* 452 F.2d 930, 933 (8th Cir.1971); *United States v. DeLutro,* 435 F.2d 255, 256 (2d Cir.1970); *cert. denied,* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971); *Carbo v. United States,* 314 F.2d 718, 741 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964).

### B. Defendant Lee

█ Lee similarly reargues the evidence and urges different inferences. He claims the evidence was insufficient for his three extortion convictions. Because evidence was contradicted, he contends his convictions should be reversed. On the contrary, the jury had sufficient evidence to convict.

The count · 3 extortion consisted of a threat to Patrick Isom, owner of Isom Brothers, a competing company. While at a BAP Geon store Lee approached Isom, who was making a delivery, and told him, "You'd better watch yourself. Take it easy." Although Isom testified that he "didn't pay too much attention" to Lee and admitted that he considered the conversation rather insignificant, he said the remarks were "forceful." They became significant after his business was destroyed by arson the next day.

Threats need not succeed in creating fear to justify a conviction for attempted extortion. *United States v. Zemek,* 634 F.2d at 1174. The surrounding circumstances of this threat, including the timing of the fire, similar previous threats by Kaye, and anonymous telephone calls, all proper considerations for the jury, *see United States v. De Lutro,* 435 F.2d at 256, provided enough evidence to establish Lee's guilt beyond a reasonable doubt.

Counts 7 and 8 charged Lee with threatening Ronald O'Dell. The evidence showed that Lee emphasized and added to threats made by Kaye while they rode in a car with O'Dell. On another occasion, Lee showed O'Dell a pistol and told him, "I use this [for protection.] I take this along and I'm not afraid to use it." Although these incidents could be interpreted to be nonextortionate, the jury had enough evidence to decide that Lee attempted extortion in both incidents.

Lee's challenge to the sufficiency of the conspiracy count is frivolous. His statements and participation in the threats to O'Dell while in the car with Kaye and his admission to Weitman that "[w]e take care of [competitors] one way or another," abundantly establish his participation in the conspiracy.

### C. Defendant Kaye

The indictment charged and the jury convicted Kaye of all 20 counts. Only two accused him of direct involvement, while the others alleged his culpability through Danno, Lee, or DeLuca. He argues that, although "Lee was Kaye's employee, Danno his friend, and DeLuca a customer, that

kind of connection is insufficient to make Kaye criminally liable for any acts allegedly committed by them." *See United States v. Winter,* 663 F.2d 1120, 1136 (1st Cir.1981).

Kaye himself delivered some threats. Other threats were delivered by Lee and DeLuca. Like Lee, Kaye virtually admitted his participation in the conspiracy. He told O'Dell, "Gee, it's too bad [Isom Brothers] burned down ... They were getting into my shorts .... I don't get mad, I get even." Similarly, he boasted that "we don't worry about competitors, we either blow them up or burn them down."

■ The direct threats, admissions, and boasts of illegal activity when considered most favorably for the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), were enough to permit the jury to find that Lee and DeLuca were Kaye's agents in the extortions and that Kaye was responsible for Danno's hiring of the arsonists. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Much of the evidence was circumstantial, but adequate. Every business burned was a competitive threat to Kaye. He was the only person with a motive to commit all eight fires. The prosecution presented sufficient evidence of Kaye's involvement with each of the offenses and of at least a general intent to commit the crimes. *See United States v. Warledo,* 557 F.2d 721, 729 (10th Cir.1977); *United States v. Gupton,* 495 F.2d 550 (5th Cir.1974).

D. *The RICO Convictions*

Citing *United States v. Brown,* 583 F.2d 659 (3d Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), Kaye and Lee argue that reversal of substantive counts requires reversal of their RICO convictions. Because we have reversed none of the predicate convictions for the RICO charge, we need not consider this argument.

V. Admission and Exclusion of Evidence

A. *Danno's Statement Admitted Against Kaye*

Mario Mariana testified that Danno, in Kaye's presence, lit a match and said,

"There is another competitor that's gone." Kaye objected to the admission of this statement against him, contending that it was not made in furtherance of or during the course of the conspiracy. Fed.R.Evid. 801(d)(2)(E).

■ Admission of coconspirator hearsay requires the statement to be made in furtherance of the conspiracy. A coconspirator's confession, admission, mere narrative declaration, or simple conversation between conspirators may not be in furtherance. *United States v. Fielding,* 645 F.2d 719, 725–27 (9th Cir.1981); *United States v. Traylor,* 656 F.2d 1326, 1332–33 (9th Cir. 1981); *see United States v. Mason,* 658 F.2d 1263, 1270 (9th Cir.1981) (statements of reassurance).

■ In our view, Danno's reference to the fate of Kaye's competitors does not appear to have helped achieve the objectives of the conspiracy. But the judge could have found that the remark was threatening toward Mariana, who later went to work for one of Kaye's competitors. We must rely on the better position of the trial judge in determining questions of admissibility.

Moreover, the statement clearly refers to the destruction of Kaye's competitors by fire. The conspiracy began with the first arson in 1973. Because it speaks in the present tense, the statement must have been made after 1973 and during the course of the conspiracy.

■ Even if the *in furtherance* and *during the course of* requirements are met, the statement must manifest sufficient indicia of reliability to satisfy confrontation demands. *Olson v. Green,* 668 F.2d 421, 427 (8th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2303, 73 L.Ed.2d 1305 (1982) (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)); *United States v. Perez,* 658 F.2d 654, 660 (9th Cir. 1981). We find that requirement satisfied as well. Danno's statement was spontaneous, against his penal interest, and within his personal knowledge. *See Dutton v. Ev-*

*ans,* 400 U.S. 74, 88–89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970); *United States v. Fleishman,* 684 F.2d 1329, 1339–40 (9th Cir.1982) (not all *Dutton's* reliability factors necessary for admission of declarations).

### B. *Lee's Statement to Weitman*

█ Shirley Weitman, an employee of GMP, a competitor and arson victim, testified that during a houseboat party Lee told her that "We don't have competitors. We take care of them one way or another . . . . [W]e either burn them down or blow them up."

Lee challenges the admission against him of that statement, contending it was relevant only to the § 844 object of the conspiracy. On the contrary, it is relevant to show agreement and participation or membership in the conspiracy.

### C. *Voluntariness of DeLuca's Statements*

█ In 1980, while serving a state prison sentence, DeLuca was interviewed by federal agents. He admitted setting some fires. He moved to suppress these statements because the agents failed to give *Miranda* warnings. After the government noted that it would use the statements only to impeach should DeLuca testify, he moved to suppress for all purposes, including impeachment, claiming he made the statements involuntarily in response to a promise of immunity. *Shotwell Manufacturing Co. v. United States,* 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963).

The court found that DeLuca was not offered immunity but only was promised that the agents would inform the prosecutor of his cooperation. It conducted a hearing, heard conflicting evidence, and found the statements voluntary.

We find substantial evidence supporting the court's conclusion and affirm it. We rarely disturb a finding, such as that here, that depends on credibility determinations. *See United States v. Dufur,* 648 F.2d 512, 514 (9th Cir.1980), *cert. denied,* 450 U.S. 925, 101 S.Ct. 1378, 67 L.Ed.2d 355 (1981).

The evidence showed that, when agents first requested information, DeLuca wanted something in return. They testified that they promised only to inform the prosecutor. DeLuca initiated the next meeting and requested immunity. Again, the agents promised only to inform the prosecutor.

The judge properly could find that DeLuca's admissions resulted from his attempt to generate an offer of immunity. That scenario is especially attractive because DeLuca's cooperation ceased abruptly when he saw the prosecutor's letter refusing his request for immunity. *See United States v. Fera,* 616 F.2d 590, 594 (1st Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980); *United States v. Perkins,* 608 F.2d 1064, 1069 (5th Cir.1979). *See also United States v. Tingle,* 658 F.2d 1332, 1335–36 (9th Cir.1981) (government must prove voluntariness, but only by preponderance of evidence).

### D. *Exclusion of Danno's Tape Recorded Conversation*

█ Danno wanted to present to the jury a tape recording made when Johnson, a government witness and former accomplice, called Danno and attempted to get him to admit setting fires. It contained Danno's exculpatory statements.

The judge properly excluded the contents of the tape. The conversation took place after Danno knew he was under investigation and after he had employed counsel. It was not trustworthy. *See* Fed.R.Evid. 803(24).

References to the tape's contents would have been hearsay. Even if Danno had argued at trial for admission to show bias, only the making of the tape, not its contents, was relevant for that purpose. That Johnson made the tape eventually was revealed to the jury. Moreover, Danno otherwise adequately explored Johnson's bias.

## VI. The Jury

### A. *Addict-Witness Instruction*

Danno argues that the judge should have used a more strongly worded jury instruction about the testimony of Brown, another government witness and former accomplice, who admitted he once was addicted to drugs. The instruction given was sufficient.

 No single form of instruction is required. One instruction that fairly conveys the care to which the testimony should be subjected is adequate. *E.g., United States v. Kenny,* 645 F.2d 1323, 1337 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). The judge's choice of language was not an abuse of discretion. Moreover, he may have been justified in refusing any kind of addict-witness instruction at all because Brown admitted only to a prior addiction. *See United States v. Ochoa-Sanchez,* 676 F.2d 1283, 1289 (9th Cir.1982).

### B. *Transcript Request*

After retiring to deliberate, the jury requested to have read to it "Lichstein testimony regarding Paul DeLuca and any other witness' testimony regarding DeLuca." The court flatly refused to reread any testimony, summarily rejecting DeLuca's offer to isolate the relevant portion.

 The judge's response to such a request is a matter of discretion. *United States v. Almonte,* 594 F.2d 261, 265 (1st Cir.1979). He is better able to determine whether the "beneficial effects from allowing the jury to review a part of the transcript outweigh the risk that the jury will give undue weight to that part of the evidence." *United States v. An Article of Drug,* 661 F.2d 742, 746 (9th Cir.1981) (per curiam). We find no abuse of discretion here.

### VII. Sentencing of Kaye

Our review of the record reveals the trial court, through inadvertence, failed to sentence defendant Kaye on counts 3, 6, and 10. Because the verdict and sentence are inconsistent, this appears to be a clerical error which may be corrected at any time. Fed.R.Crim.P. 36. We have reversed Kaye's conviction on count 10, and we remand for sentencing on counts 3 and 6.

### VIII. Conclusion

We reverse convictions on counts 4, 10, 12, 14, 16, and 18, which charged Kaye and Danno with violating 18 U.S.C. § 844(i). Because the conspiracy convictions of all defendants rested on the validity of the § 844 counts, we reverse them as well. We affirm the convictions on all remaining counts.

Reversed in part, affirmed in part, and remanded for sentencing on counts 3 and 6.