1 F.3d 1247
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Adrian Reza IBARRA, Defendant-Appellant.
 No. 90-50159.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1993.
Decided July 15, 1993.
 
 Before FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Adrian Reza Ibarra appeals the district court's judgment of conviction and sentence on the following charges: conspiring to manufacture and transfer counterfeit government obligations, in violation of 18 U.S.C. Sec. 371, 471 and 473; manufacturing counterfeit government obligations, in violation of 18 U.S.C. Sec. 471; aiding and abetting the manufacture of plates for printing counterfeit government obligations, in violation of 18 U.S.C. Sec. 2, 474; possessing plates from which counterfeit government obligations were printed, in violation of 18 U.S.C. Sec. 474; and counterfeiting parts of government obligations, in violation of 18 U.S.C. Sec. 474. Ibarra argues on appeal that (1) the district court's judicial misconduct unfairly prejudiced him and (2) the district court erred in sentencing him based on the partially printed counterfeit obligations. We reject his arguments and affirm the judgment of the district court.
 
 I.
 
 3
 On May 26, 1989, based on information obtained from confidential informants, the Secret Service obtained a search warrant for Alfa Enterprises, a print shop in Bell, California owned by Ibarra and his brother. One of the confidential informants went to Alfa at 7:30 p.m. and observed Ibarra working on counterfeit $100 bills. The informant left Alfa at approximately 9:30 p.m. and conferred with the Secret Service agents surrounding Alfa. The informant returned accompanied by the agents, and the agents secured and searched the premises. The search revealed over $5 million in partially printed $100 bills (fronts only), negatives of both $100 and $20 bills, plates of $100 and $20 bills, and other counterfeiting supplies.
 
 
 4
 During Ibarra's trial, the district judge made statements in the presence of the jury presence that were critical of Ibarra's counsel and the counsel of his codefendants. However, a full review of the record shows that the district court did not make any derogatory statements regarding the defendants or state an opinion on their guilt or innocence. Additionally, the district court instructed the jury that it was the sole judge of the evidence and that it must disregard the court's rulings on objections, admonitions of counsel, questions and comments.
 
 
 5
 On November 21, 1989, the jury found Ibarra guilty of the above-described charges. Ibarra was sentenced on February 21, 1990. The presentence report issued by the United States Probation Office recommended the following determinations, based on the United States Sentencing Guidelines (U.S.S.G.): Pursuant to U.S.S.G. sections 2B5.1 and 2X1.1, Ibarra's base offense level was set at 9. This offense level was increased 11 levels based on sections 2B5.1(b)(1), 2F1.1 and 2X1.1(a) because Ibarra was determined to have intended to manufacture counterfeit currency of $5 million or more. Ibarra's offense level was further increased two levels pursuant to section 3B1.1(c) because he was determined to be a leader in the offense. Ibarra, who had no prior criminal history, was determined to have a criminal history category of I, resulting in a sentencing range of 41-51 months. The district court rejected Ibarra's argument that the 11 level increase based on the partially completed counterfeit currency was inappropriate and imposed a sentence of 45 months imprisonment.
 
 
 6
 Ibarra now appeals to this court.
 
 II.
 
 7
 Ibarra argues that the district court engaged in judicial misconduct by appearing to disfavor the defense and that reversal is therefore required. Because Ibarra did not object to the district court's conduct or move for a mistrial based thereon, we review for plain error. United States v. Spencer, 981 F.2d 1083, 1088 (9th Cir.1992); United States v. Sanchez-Lopez, 879 F.2d 541, 551 (9th Cir.1989). To merit reversal, such an error must affect a criminal defendant's substantial rights. Spencer, 981 F.2d at 1088. Reversal based on plain error is exceptional and occurs only when necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process. United States v. Kennedy, 714 F.2d 968, 977 (9th Cir.1983), cert. denied, 465 U.S. 1034 (1984) (citations omitted).
 
 
 8
 As described above, the district court made several statements that were critical of the defense counsel. A trial judge ought always to avoid the appearance of giving aid to one party or another. United States v. Swacker, 628 F.2d 1250, 1254 (9th Cir.1980) (citing United States v. Allsup, 566 F.2d 68, 72 (9th Cir.1977)); see also United States v. Eldred, 588 F.2d 746, 749 (9th Cir.1978) (stating that a trial judge must avoid the appearance of advocacy or partiality). However, statements which seem to disparage a defendant's attorney rather than the defendant himself are less likely to prejudice the defendant before the jury or to affect the outcome of the trial. See Eldred, 588 F.2d at 750; United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982); United States v. Carignan, 600 F.2d 762, 763-64 (9th Cir.1979). Here, the district court's statements, though unfortunate, probably did not prejudice Ibarra.
 
 
 9
 Additionally, not all the challenged remarks were wholly improper. Judicial comments on the evidence are permissible and often helpful to counsel and to the jury. See Sanchez-Lopez, 879 F.2d at 553. A judge may participate in the examination of witnesses to clarify evidence, confine counsel to evidentiary rulings, ensure the orderly presentation of evidence and prevent undue repetition. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 909 (1989) (citing United States v. Mostella, 802 F.2d 358, 361 (9th Cir.1986)). It appears that some of the district court's comments were made for these legitimate purposes.
 
 
 10
 Furthermore, statements which otherwise may be improper do not necessarily call for reversal where the potential adverse impact was apparently obviated by the jury instructions. See Sanchez-Lopez, 879 F.2d at 553; DeLuca, 692 F.2d at 1282; see also Spencer, 981 F.2d at 1088 (finding no plain error where jury instructed that it was the sole judge of the facts); Quercia v. United States, 289 U.S. 466, 469 (1933) (holding that a trial judge may comment upon the evidence and express an opinion on the facts as long as the judge makes it clear to the jury that it is the trier of fact). The district court's instructions sought to make it clear that the jury was to disregard the comments of the court, so it is unlikely that Ibarra was prejudiced.
 
 
 11
 Finally, even if some of the comments were seen as disparaging Ibarra, reversal is not mandated because the record does not describe a "pervasive climate of partiality or unfairness," United States v. Garcia, 924 F.2d 925, 928 (9th Cir.), cert. denied, 111 S.Ct. 2809 (1991) (quoting De Luca, 692 F.2d at 1282), or show actual bias or leave an abiding impression that the jury perceived an appearance of advocacy or partiality. See Laurins, 857 F.2d at 537 (9th Cir.1988). Moreover, only in severe circumstances have we held that reversal was mandated when a judge overstepped his proper role. Mostella, 802 F.2d at 362 (citing Allsup, 566 F.2d at 72 (judge's questions created impression that defendant had threatened witness); United States v. Pena-Garcia, 505 F.2d 964, 967 (9th Cir.1984) (court indicated that defendant perjured himself); United States v. Stephens, 486 F.2d 915, 917 (9th Cir.1973) (judge commented on evidence and suggested the defendant's guilt)); see generally DeLuca, 692 F.2d at 1282; United States v. Saavedra, 684 F.2d 1293, 1299 (9th Cir.1982). This case is not such an extreme, and we decline to reverse.
 
 III.
 
 12
 Ibarra further argues that the district court erred in sentencing him based on the amount of partially printed currency seized from Alfa at the time of his arrest. We review de novo the district court's interpretation and application of the sentencing guidelines and review related factual findings for clear error. See United States v. Conkins, No. 91-10306, slip op. at 1299 (9th Cir. Feb. 18, 1993).
 
 
 13
 Ibarra argues that the district court made both a legal and a factual error. Ibarra argues that the partially completed currency cannot provide the basis of an enhancement under the guidelines. Ibarra also disputes the presentence report's conclusion that he intended to distribute the $5 million in counterfeit currency.
 
 
 14
 A. U.S.S.G. Sec. 2B5.1's Application to Incomplete Counterfeit Items
 
 
 15
 Ibarra's sentence was determined in part based on section 2B5.1(b)(1), which authorizes an upward adjustment based on the face value of the counterfeit items. Ibarra disputes the application of this section to partially completed counterfeit items, but there is no doubt that such items can support an enhancement thereunder. Comment 2 to section 2B5.1 defines an item as "counterfeit" if it is "an instrument that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." Ibarra interprets this commentary as meaning that only fully completed counterfeit bills provide the basis for an enhancement. But the remainder of Comment 2 states that "[o]ffenses involving genuine instruments that have been altered are covered under Sec. 2B5.2," which governs sentences for altered instruments. Thus, it is clear that the first sentence of Comment 2 refers not to fully completed counterfeit items, but rather to fully counterfeit items, i.e., items that are not genuine to any extent.
 
 
 16
 This interpretation is further supported by Comment 3, which states that the enhancement authorized in section 2B5.1(b)(2), which provides for an upward adjustment based on the possession of counterfeiting materials, "does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." Thus, by implication, items not withstanding even minimal scrutiny are nonetheless counterfeit for purposes section 2B5.1. Cf. United States v. Turner, 586 F.2d 395, 397-98 (5th Cir.1978), cert. denied, 440 U.S. 926 (1979) (affirming a conviction for manufacturing black and white photocopies of currency).
 
 
 17
 Ibarra's argument is also inconsistent with the underlying statutory provisions and policy. Ibarra's interpretation of section 2B5.1 would create a conflict between the guidelines and the counterfeiting statutes. 18 U.S.C. Sec. 474(a) makes it punishable to possess, manufacture or distribute materials used for the printing of counterfeit items or "any part thereof." Further, section 474 does not define offenses involving partially completed counterfeit items as less serious felonies. Additionally, Ibarra's interpretation of the sentencing guidelines would result in longer sentences for those possessing smaller amounts of completed counterfeit items than for those manufacturing greater amounts of uncompleted counterfeit items. This perverse result is not required by the guidelines or the counterfeiting provisions. The district court's application of section 2B5.1 was proper.
 
 
 18
 B. Findings of Intended Conduct Under U.S.S.G. Sec. 2X1.1
 
 
 19
 Ibarra's intention to print the $5 million in counterfeit items is relevant under U.S.S.G. Sec. 2X1.1(a), which, at the time of Ibarra's sentencing, authorized an upward adjustment for conspiracy offenses based on intended offense conduct established with reasonable certainty. Ibarra argues that the district court failed to address his argument regarding his intention to print the counterfeit items. Although the evidence at trial and Ibarra's being convicted under 18 U.S.C. Sec. 474 suggest that he intended to produce the $5 million in counterfeit items, "[t]he jury's determination of guilt and the court's determination of relevant sentencing factors are separate undertakings." United States v. Navarro, 979 F.2d 786, 788 (9th Cir.1992). Because Ibarra objected to the presentence report in this regard, the district court was obliged to make a written finding as to this disputed matter in order to comply with Federal Rule of Criminal Procedure 32(c)(3)(D). "When a defendant challenges information contained in his presentence investigation report, the district court must make written findings of fact concerning any disputed matter which it relies upon in sentencing. Strict compliance with Rule 32(c)(3)(D) is required and failure to comply will result in the case being remanded." Conkins, slip op. at 1303 (quoting United States v. Turner, 898 F.2d 705, 709 (9th Cir.), cert. denied, 495 U.S. 962 (1990)) (internal quotations and punctuation omitted); see United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc) (holding that findings must be made at the time of sentencing). Compliance with Rule 32(c)(3)(D) is a legal issue reviewed de novo. See United States v. Maree, 934 F.2d 196, 199 (9th Cir.1991).
 
 
 20
 Ibarra's argument lacks merit. The district court adopted[1] the relevant finding in the presentence report and independently found that Ibarra intended to print the $5 million in counterfeit items. These findings are in the record. Therefore, the district court has made the requisite findings,[2] and remand is not required.
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Ibarra argues that the district court's adopting the findings of the presentence report does not constitute "strict compliance" with Rule 32. However, "[t]he court may adopt the factual findings of the presentence report." United States v. Navarro, 979 F.2d 786, 789 (9th Cir.1992) (citing United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990)). The record is clear as to what the district court found, and remand is therefore unnecessary. See Rigby, 896 F.2d at 394 (indicating that clear findings on the record at the time of sentencing satisfy Rule 32)
 
 
 [2]
 Ibarra argues in his reply brief that the district court should have decreased his offense level based on U.S.S.G. Sec. 2X1.1(b)(2) because the conspiracy was never completed. This issue was not raised at sentencing. Furthermore, the district court adopted the findings of the presentence report, which states that the conspiracy "was terminated only by intervention of law enforcement authorities." This finding precludes a downward adjustment under section 2X1.1(b)(2). See U.S.S.G. Sec. 2X1.1 background